All right, we're going to begin this morning with Everett, this long-standing case. Everett v. Pitt County Board of Education and Mr. Dorison, when you're from the UNC Center for Civil Rights. With me at council table is my colleague from the Center, Elizabeth Haddix. We represent the plaintiffs in this matter. Two and a half years ago, this court issued an opinion in this case on the plaintiff's motion to enjoin the district's 2011 student assignment plan. In that holding, this court was clear and direct. Quote, even if we assume that the district court will fully consider the issue of unitary status in December 2012, this does not absolve the school board from the burden of demonstrating that the 2011-2012 assignment plan moves the district towards unitary status. The court in that same opinion emphasized the 2009 consent order specifically confirms that the desegregation orders in Teal and Edwards remain effective and applicable and also, quote, there is no dispute that the school district has not attained unitary status, unquote. Given that fact, this court presciently predicted that a failure or refusal by the lower court to make a determination of whether the 2011 assignment plan complied with the controlling orders would, quote, necessarily but impermissibly provide the school board with the latitude to discriminate pending the resolution of some future hearing, unquote. And that's exactly what happened here. In the face of its own consent order and this court's express ruling that the board be required to defend the 2011 plan, the lower court instead held that the board has no obligation to defend its actions, thereby giving the board, which conceded that it had not been declared unitary when the 2011 plan was adopted, exactly the latitude to discriminate that this court warned against. In making clear on remand that the lower, this court made clear that on remand, the lower court had to determine whether the 2011 plan was consistent with the controlling orders. This court reaffirmed the fundamental principles of school desegregation law, that a district still under court order, one, must comply in good faith with the controlling court orders, two, must eliminate the vestiges of discrimination to the maximum extent practicable, three, demonstrate that any existing disparities are not the result of actions taken by the board, and four, then secure a judicial determination of unitary status from a court. Again, there is no dispute that at the time the 2011 plan was adopted, the original desegregation orders in Edwards and Thiel. Did that plan ever get implemented or was it put on hold while it was implemented? No, that plan was implemented. It was implemented when the 2011 school year began. Has that plan been modified in any significant way since then? It has not, your honor. That is, that, there has been no subsequent reassignment plan or changes adopted by the school board. Why can't we read the district court's order as a finding perhaps implicit that notwithstanding the 2011-2012 plan, the school board had complied with its obligations to desegregate? Well, two things to that, your honor. One, there is no question that the school board had not been declared unitary, and so was still required to comply with all of the existing court orders, including the 2009 consent order. Which basically just said that the parties would work together toward achieving unitary status. That's right, and it said that the parties would... It just stated the obvious, it seems to me. Well, that's correct, your honor, but it did reiterate, the 2009 consent order reiterated that the Edwards and Thiel orders were still controlling and that the district still had that affirmative obligation to address disparities and to move the district towards unitary status. Let me ask you about those orders because for 35 years, nothing really happened with respect to those cases. They lay dormant, at least the orders did. Isn't that a suggestion that the school board had been moving toward unitary status without any issues or complaints from any of the interested parties? Well, what it suggests is that the school board continued to work under those obligations, and certainly... Well, I guess the question is how long does it take? Well, it's the burden is on the school board to come forward and seek unitary status when it believes it has achieved the goal of remedying the vestiges of discrimination. That's the burden that's on the school board. The school board never came forward and asserted that it was unitary, and in fact, when another group of parents, the Greenville Parents Association made a motion in 2008 seeking unitary status, the school board actively opposed that motion and said... What does the term moves toward unitary status mean? Well, I think, Your Honor, that it means that the school board continues to have the obligation that it has to remedy the vestiges of discrimination, it has to continue to comply with the court orders, it has to ensure that it doesn't take any actions that increase, any new actions that increase segregation in the schools, and then at a certain point when it believes it has to do with the court and seek a declaration of unitary status. How do we deal with the district court's finding that as of 1986, the vestiges of discrimination had been eliminated? Well, there's a couple of ways that I think that the court has to look at those. First, the fact is that the burden on the school board remains to eliminate the vestiges of discrimination and also not to take any actions while under court order that would increase segregation or would suggest to the public or to the court that it is not committed to desegregation or to integration going forward. In this case, we don't have that. We have, in 2011, a school board admittedly that had not been declared unitary adopting an assignment plan that also admittedly increases segregation in the school district. Whatever moving towards unitary status means, what we know it doesn't mean is regressing away from unitary status and increasing segregation in the schools, which is exactly what happened. I don't know if I recall. It seems like the trial judge found the vestiges had been removed as of 1986, but that since 2000, year 2000, unitary status had been obtained, in fact, and therefore, the board really wasn't under any obligation from that time on to do anything with regard to the Teal and Edwards case. I believe that's a fair reading of the district court's order, and it's a fundamentally erroneous. It's a fundamental legal error. The determination of unitary status by a court is the bright line that divides a school district that has the affirmative obligation to act in good faith and take all necessary steps to address imbalances from one that no longer has that obligation. There is no judicial limbo or middle ground legal status for a school district to suggest that it has somehow achieved. How does good faith play into this? Well, good faith is critical because good faith, as it's been defined in Freeman most clearly, says that even if a board can show it has remedied the vestiges of discrimination at some earlier time, and we don't agree that has happened, the obligation to comply with all existing court orders continues until a unitary status determination is issued. And it's at that point, and only at that point, when a court issues the unitary status declaration, that the district is relieved of its obligation. And that unitary status declaration cannot be retroactive? That's right, Your Honor. It is clear that that is a bright line and that a retroactive grant of unitary status is a violation of school desegregation precedent. In Capacchione, the court said the termination of court supervision today cannot relate back to an earlier time. I thought that was for purposes of qualified immunity. Well, I think it goes beyond that. I mean, that was the specific reference, but it's clear that a retroactive declaration of unitary status would upend school desegregation precedent and create this kind of... I guess, why? If, in fact, the reality on the ground is that the school had achieved, the school board had achieved unitary status, why would a finding to that effect upend relevant law? Well, because there can't be a determination of unitary status without that court declaration. I agree with you, but if, in fact, the court finds, as a matter of fact, that the school board had been unitary based on the evidence back as early as 1986, what's wrong with that? Well, part of the school board's obligation, if that were the case, would be to come forward and to seek the unitary status declaration. That otherwise... Well, okay, they're a little late, 20 some odd years late. Well, okay, what's the effect of that? Well, otherwise, what you have is this bizarre situation where the party found liable for the constitutional violation gets to determine whether and when it had fully complied with that obligation. Well, not really, because the court ultimately has to decide that. Well, but here what we have is a district that can claim it has achieved unitary status, abandon its remedial obligation to address discrimination without that judicial determination that it's unitary. Well, they take the risk, I suppose, that they're wrong, but if, in fact, the evidence on the ground suggests otherwise, then why can't the court simply acknowledge that reality? Well, until they're declared unitary, Your Honor, they are still obligated to comply with all of the controlling orders and to act in good faith. And so... Well, let me ask you, what's the bottom line here? If we send this case back, what would an order look like from your perspective? I think an order would vacate the unitary status determination and would direct the lower court to grant plaintiff's motion to enjoin the 2011 plan and instruct the school board to come back with an assignment plan that moves the district towards unitary status and that could be implemented. What would be the grounds for vacating the binding of unitary status? Well, Your Honor, the... The evidence, I suppose, the court relied on statistical data, and if we were to conclude that that data supported the violation, I mean, supported the conclusion, what room would we have? Well, again, there's no dispute that the district was still subject to the court's jurisdiction when it adopted the 2011 plan. Therefore, the only way it could be declared unitary today or in 2013 when the trial took place was to be able to demonstrate, as this court instructed, that the 2011 plan moved the district to unitary status. If it cannot prove that, and the evidence is clear in the record that they can't, in fact, it's uncontroverted that the plan was moved, then, in fact, the unitary status motion is moot, not the plaintiff's motion. If they could prove that the 2011 plan did, in fact, move them towards unitary status, then conceivably, the court could have said it moved them towards, in fact, moved them all the way to unitary status. Tell me if I'm wrong in this, but I'm just reading this, and I'm thinking in answer to Judge Niemeyer's inquiry, because I think that's the real issue here, is to what extent could we vacate the district? Because if we don't, as Judge Diaz has said, what difference is it going to make? You can go ahead and prospectively do the same thing, so nothing changes. But it seems to me that, at least in reading what you put forth to us, that it is the good faith analysis that applies to the 2009 consent order. And to some extent, you have to articulate to us, what is the obligation under that order other than to eliminate the vestiges of discrimination that the judge found were eliminated in 1986? What else is the obligation? Well, in addition, I appreciate the question, Your Honor. In addition to having remedied the vestiges, or to proving that they've remedied the vestiges of discrimination, the good faith component also has, again, coming from Freeman, the obligation to show that current racial imbalances are not the result of some new action taken by the school board. And thereby ensuring the public and the court that the school board will not suffer discrimination in the future. Here, they can't show that. It seems to be that it's not as a result of vestiges of discrimination, it's a result of demographic shifts, that what has happened over this time period. And so in essence, what is reflected here is not an intent on the part of the school board to try to perpetuate de jure or even de facto segregation, it is, it's basically out of our hands, the population has shifted. Well, respectfully, Your Honor, that's not the case. This is not Freeman. This is not the sweeping demographic changes of DeKalb County. This is a school board that the disparities that were shown in the trial, the disparities that exist following to the 2011 plan, are the direct and proximate result of the school board's actions in adopting that plan. And because they were still under court order, one of the things they couldn't do was take actions that increase or exacerbate segregation in the district. There's no dispute that the 2011 plan increased segregation in the district. The plaintiff's own expert, I mean, the defendant's own expert, Dr. Armour, indicated that segregation increased after the 2011 plan. And I'll remind the court that in that plan was the opening of a brand new school, which Dr. Armour, the defendant's expert, testified, a new school presents a unique opportunity for a district to address the legacy of discrimination. Now, it would seem to me if the court was correct in its finding that unitary status didn't exist in 2000, there was no need to move toward unitary status because it already exists. I don't quite get that anomaly there as to what our analysis of the 2009 plan would then lead to. But if, in fact, as you indicate, in 2009 when this is going, when the consent order comes up, the idea is to develop a plan that will, at least at that time, move toward unitary status. And, in fact, the plan increased segregation. That would seem, might be a basis for challenging good faith. I think that's exactly right, Your Honor, and that's what we've indicated in our brief, that the district, still under court order, admittedly, still has an obligation to act in good faith, adopts a plan that increases segregation in the district, that opens a brand new school at over 80 percent minority, and that rejects a less discriminatory alternative developed under the school board's own policies. All right. Thank you, Mr. Torgerson. You have some rebuttal. Mr. Hsu. Thank you, Your Honor. May it please the Court. The obligation of the school system, after it eliminated the vestiges of discrimination, and that's not a retroactive declaration, that was a finding by the judge that based on 15 years of an extremely high level of racial balance in the schools, created and enforced by at least two major reassignment decisions by the board, that the vestiges of the constitutional violation had been removed and that the causal link had been severed. As of what date? As of the merger at 1986 for both systems. So that is a retroactive finding. I don't, Your Honor, I respectfully disagree. I think it is a finding that as of that date, the causal link had been severed. But the court hadn't, but it's now 2014, and so he's making that declaration, you know, 28 years later. What he's doing is making, he's trying to ascertain what Judge Wynn was discussing. What is the obligation of the school system? What was your obligation? Why didn't you come forward in 1986 or any of the intervening years to put the court to the test? I think in many of these cases, and particularly the older cases, what you see is people just moving along, trying to do the best that they can. And the obligation of the school system, I believe, while it was under court order and after the vestiges of past discrimination had been eliminated, to continue operating in good faith. And when you... A little bit more than best you can, though, because you're talking school children, you're talking parents. And there's a policy here. When the court makes this determination in 1970 as a result of the Teal and Edwards case, segregation was real. I mean, it wasn't a jury. In 54, it had been declared illegal, but it just took to 70 to finally reach Pitt County. So it gets there, and the court then recognizes that we need to make sure that you use good faith in moving toward unitary status. And the court here makes a determination back in 1986, the vestiges of discrimination had been eliminated. And yet, from 1986 to 2014, parents have been forming organizations on both sides, the board has been meeting, they've been representing to this court that we are moving toward unitary status. And then you come up here on the previous case, and we essentially said, well, you put the burden on the wrong person, the wrong side. Go back and do it again. Well, instead of doing it again, he says, oh, no, we've got unitary status. So everything we've done since 2000, I guess, is a better way, because 86 is probably not the date, is we didn't have to do this. We didn't have to move toward unitary status. So, aha, parents, all this time we spent in here with all these meetings, all these times going back and forth, we didn't have to do any of this. So just, it's moot. Forget it. It is, Your Honor, respectfully, it isn't. Is that accurate, though? That is not accurate. Tell me what is inaccurate in what I just said. That the board continued, the board did not come to this court or any other court to seek relief from the court orders. But I'm thinking of a relationship with the parent. I understand the law in terms of what's going on, but really, when you're talking about good faith, what we're talking about is children. You know, it's a very sensitive thing when you're talking about our children. And I'm talking about the board's relationship with the people and the fairness of the process, and they are coming in and they are fighting this thing. And as Judge Diaz says, not one time during that entire period of time did you go to a court and says, we are unitary. You just sort of said, well, we kind of got it de facto. One day we'll pop up, of course, you didn't really, because you didn't know you had it until the court told you, I take it, right? That's correct, Your Honor. So everything you were doing before this, you were laboring in the same way as the other side. That is that you've got to move toward unitary status. That's what you did the 2011 plan based on, right? And that is what the board did in all the reassignments between 1986 and the present. And so that goes to the good faith aspect of it. So if you are laboring on this, and you set this 2011 plan up, and it creates more segregation, not less, how is that, in good faith, moving toward eliminating, moving toward unitary status? So to apply the Freeman versus Pitt lens, the two most recently opened elementary schools in Pitt County are in Census Tract 6, and this is illustrated in Figure 5 and Table 5 of Dr. Clark's rebuttal report. So Ridgewood Elementary and Lake Forest Elementary are both in Census Tract 6. Over the past 20 years, that Census Tract has had a growth of almost 2,000 black students, student age people, and approximately just over 100 white student age people. Now with Ridgewood, the board opened that school in approximately 2005 racially balanced because it was their goal to maintain racial balance. By the time we get forward to the plan that took effect in 2011 and 12, the board had a problem with sustainable racial balance based on a heavily satellited plan. So they asked for a plan that included racial balance, and the testimony was that they went back and adjusted the plan to improve racial balance. They closed a persistently African American school, Sadie Salter, had been rebalanced and rebalanced and rebalanced over the years, including after 1986. And the point is that that is demonstrating good faith. Now with what good faith is, that every reassignment plan has to be more racially balanced than the last. Did the trial judge make a determination to that effect? What you said sounds good, but is that in his award? So the trial judge, Judge Howard, said that as of the end of merger, you have cut the causal link, as the Freeman v. Pitts case says. There's no proximate causality. So if you accept that, there's no need to go through that good faith analysis? Well, I think that there is, Your Honor, a need to go through the good faith analysis If you already have unitary status as of 2000, you're no longer under Teal and Edwards. As a matter of fact, there's no need to do anything. You can do what you want to do. The Supreme Court in Pitts and also... True, true. I would disagree, Your Honor. The Supreme Court... So you can't... You're saying that... So you're saying, essentially, after the declaration that you have unitary status as of 2000, you are still under Teal and Edwards? We were not declared unitary. When Judge Howard wrote that the school system was unitary, he was doing something that the Belk Court talked about, I'm sorry, the Cappaccio Court, and also the Freeman v. Pitts talked about. I'm going to let you argue, but I want to make sure I understand what you just said. You said we were not declared unitary. So what is the effect of a declaration of unitary and a statement that you were unitary back then?  I believe that there is a difference, Your Honor. So you are maintaining that the unitary status that you are arguing for today occurred when Judge Howard, on that date, said it's unitary. Not that it happened before. Yes, Your Honor. That was the declaration of unitary status. As Judge Potter said in the Charlotte case when it came back through, the term unitary is used in a lot of different ways. It could mean a school system that is under court order and complying with the DSEG order, or when it's framed a declaration of unitary status, it means something else. So if I follow that, that the declaration of unitary status occurs when Judge Howard says it was on that date, and you therefore were bound up until that time period to comply with the 2009 consent, the order that was there, then at least you must demonstrate you accept that the 2011 school plan was enacted in good faith. Is that something you accept? Yes, sir. Okay. And was moving the district toward unitary status? Yes, sir. And so the reason that it made sense to consider both of these questions in one hearing, the question of whether the school system should be declared unitary, and the question of whether the school system's reassignment had moved the district towards unitary status. Keep in mind, he declared, he said it was moot. I'm not sure he considered both. Well, the relief was moot, and I think if you go back to the Pitts case where the court may determine that it will not order further remedies in the area of student assignments where racial imbalance is not traceable in an approximate way to the constitutional violation. So the question is, does move the district towards unitary status equal improve the racial balance at schools every time you reassign it? And the Pasadena versus Spangler case says that's not the case. Unitary status is not a racial balance percentage. And when you examine whether the Board of Education acted in good faith in the decision they made in 2010 for the 11-12 reassignment, we submit that you have to consider that they closed a persistently and repeatedly very imbalanced school, that they made significant improvements over a proximity-based plan, although I do want to emphasize that neither one of the plans, the plan that appellants present as ideal, had not been applied to a computer system that breaks up the county into little units, it doesn't care about where a neighborhood is, where a street is, and everything else. So that plan would not have been achievable. I notice most of these schools are elementary schools that we're talking about in terms of balance, but the high schools don't seem to be included in the… Well, the high school, to use one of the measures of racial balance that's in the case, the D index, the high school dissimilarity index for Pitt County is still in the mid-20s, which is extremely low. But you have far fewer of them, of those… I think there are five. So it is easier to balance those. But to talk about that again, if you look at overall measures, Pitt County is quite racially balanced compared to other comparable systems in North Carolina. That's reflected in Dr. Armour's report. Admittedly, those are not under court order at this point, but they have… When you say racially balanced, are you saying racially balanced based upon the number of students in the school, or racially balanced based upon the population? The particular measure in question is based on the number who are enrolled in the school, or in fact on those students who are enrolled in the school. The D index basically gives the percentage of kids who would have to be moved to achieve perfect racial balance. So it's in the mid-30s for elementary school in Pitt County, which means 17% of black students and 17% of white students would have to be moved to achieve a perfect racial balance. If you go to other school systems in North Carolina that have a similar size and similar racial breakdowns, there's none that is that low. Pitt County is the lowest. So I think you were discussing the district court's order and its description of this 2011-2012 plan and the need, what the board was faced with in implementing it. And he does describe it, he describes the background and the history of the need for the plan. And he doesn't take the next step and say, under the facts presented, this plan was enacted in good faith and given all the circumstances, in fact, moved the board toward unitary status. Is that what's missing here? Well, I think that an explicit declaration that it moved the board towards unitary status is missing. He makes the sort of, by implication, saying, even assuming argument, they didn't. But I do believe that by saying at the end, I mean, the whole point of the analysis was at this point in 86, the proximal length was severed. And I've looked at all this information afterward to show that the board continued to attempt to comply in good faith with all the desegregation orders, including the 2009 order. I believe that's the point of that analysis. And then at the end, he says the board has applied good faith. Perhaps it could have been said more explicitly, but I think it's there. Doesn't it have to be explicit? I mean, the determination is that you've got to show good faith insofar as the borders are closed. Part of the process of this is, again, we're dealing with it in terms of the court, and the courts have gotten involved with the school board and the whole bit, but we're dealing with our children. And we're dealing with the back and forth between the parents. And that's why they were able to work out a consent order. We like consent orders. When you consent and you agree on something, that makes it nice, and you kind of go back. So then you've got this consent order. Everybody's there relying on it. Everybody comes up here, and you go back, and you think you're going to argue one thing. And all of a sudden, boom, you just had the rug pulled out from under you. But even though you say the declaration is when this all starts, and if the declaration happens there, the only thing you've got to satisfy is that the 2011 school plan was enacted in good faith, and it's your position that it was enacted in good faith. Yes, Your Honor. And it was also, I mean, there are parents, and there are parents. There's a lot of evidence in the record about how engaged the community was in this process in discussing the degree to which the community could sustain a lot of satellites. If you look at the- But you must agree that, from Judge Diaz's perspective, and I think you may have agreed, the judge didn't explicitly make that finding. The judge explicitly made a finding about- The 2011 plan, he said it, as you say, maybe implicitly. We may have to find it somewhere at the end or somewhere in it to say it, but he didn't explicitly make that finding. Isn't that a critical finding to make? Judge Howard made the explicit finding that the school board acted in good faith after analyzing its actions from 86 to the present. He didn't specifically say that they acted in good faith in 2005, that they acted in good faith in 2011 and 12. So I think, in that sense- Well, it seems as though he would because you've got a consent order. Everybody is agreeing. Whatever has happened before, and as I said, consents are good, right? I mean, it's good to have both sides agree. And they all say, we're going to work together. And part of the consent order is, we're going to all come to the table. We're going to sit down, and we're going to hash this out. And it just seems like, fundamental to any determination beyond then, that consent order becomes very focal, and you would at least say, good faith has been exercised in that, and as a result of what is going on here, racial balance has been achieved, therefore, unitary status is declared. Judge Howard made the clear finding that the board had acted in good faith. But he didn't make that finding. Well, that finding is included in the overall finding. Standing here arguing before you, I'd prefer, I suppose, that each one had been outlined. But the finding is there. The analysis is there. And if you talk about whether he declared the school system to be unitary effective in 1986, he didn't even use that language when he was talking about the old county system. You made a fairly persuasive argument that the 2011-2012 plan, in fact, was a good faith effort to continue to eliminate the vestiges of discrimination based on the circumstances present at that time. But Judge Howard, in his order, page 40, says at one point, that even assuming arguendo that the school board is unable to meet its burden of proof after that plan, an order enjoining the continued implementation of the plan would be pointless for the reasons he explains. That can't be right. If, in fact, you've not met your burden and you're still under the auspices of the segregation orders, then something needs to be done. I agree, Your Honor. But what Judge Howard had done was said that the vestiges weren't there. And he made note, he did not make the finding that we failed to meet that obligation. And in light of the whole history of the matter, good faith compliance, removing the vestiges, and good racial balance overall after 40 years under court supervision, I think under Pitts he has the ability to say, no more remedial relief is required in the area of student assignment. The appellants accused Judge Howard of sleight of hand. The word that they used in the brief was legerdemain, for making that decision that we've just been talking about, that the causal link was cut in 1986. You haven't heard argued today as much, but it's really appellants who are trying to perform a magic trick, and that's make all this history go away. And when you look at these old... Well, I don't know. Didn't you make the history go away when you went in and said we have unitary status? Basically, you're saying everything we've done, we just did it gratuitously. As I've attempted to articulate, Your Honor, it's not gratuitous. Until there's a declaration of unitary status, the board has an obligation to operate in good faith. I appreciate that, Ken. I think that's a good point. You indicated I didn't know that was your position, that the declaration of unitary status on the date that the judge made it, that's when it's effective. So you're not arguing retroactive effect. Is that what you're saying? I'm certainly not arguing that the board didn't have an obligation to comply with the court orders until the court said you were no longer subject to court supervision. The point is, what is the obligation? The board did not have an obligation to comply until. You mean the board had an obligation to comply with Teal and Edwards orders until it had a declaration of unitary status. Until it had been declared unitary. And that's what all that analysis that Judge Howard did that followed his discussion of the pre-merger systems was about. Was there good faith? Talking about the success of the plans, talking about the demographic issues and the other issues that the school board faced. It just seems to me in the end result, it's just an easy way to do it. And it seems, I don't want to use the word fair, but something didn't seem right that you're going back in the court and all of a sudden the very thing you could have asked for years and years ago, you come in and ask for it and the judge gives it to you and then it says, oh, back since 1986. And of course, I mean, that's easy for the judge to say back since 1986 and you didn't have to move toward it because it's already there, 2000. But it just seems to me it's a simple thing to go back and simply say, well, we exercised good faith and you proved a good faith. At that point, go in and ask for the unitary status and then move from there with it as opposed to lumping it all together and then the end result coming out where the judge doesn't really make a finding on the 2011, he says overall they've done good faith and then says unitary status. And that's been around. Well, the fact of the matter is shown in the hearing. That can't feel good to anybody. I mean, that seems to be something wrong with that. Well, Your Honor, I think that this is an area where the district court judge is entitled to discretion. The district court judge is in the community and knows the school system. Has anybody ever done this before? And I want to make sure I ask this correctly because I just hadn't found it and I said, well, it's interesting. And I'm also thinking about other areas of law. Do we do this anywhere else? Let a district court come in and make a determination of something way back, bring it forth, and then says, okay, move now. Because I say back then it already existed. In the context of desegregation cases, it often happens. In these old cases, typically boards do not rush to the court to try to get them self-declared unitary. It often happens. In the Muskogee County case. The district court comes in and says, just what was done here, this has happened often. Courts, as in Pitts v. Freeman, a decision of the Supreme Court of the United States said, even while you have not yet been declared unitary and once you have severed the causal link, then additional remedial action, the court is not required to order it. And no one is in a better position to assess that than the person who signed, who wrote the 2009 consent who's in the community. But additional remedial action contemplates something prospective, doesn't it? I mean, you don't have to do anything now that your unitary status is. Well, if you take, again, the Pasadena case and the Muskogee case, in Pasadena the Board of Education was subject to jeopardy for allegedly not complying with the implicit requirement of the court that they rebalance to maintain a certain percentage. And that's where the court said percentage is not what unitary status is about. So, Your Honor, I contend in summary that this kind of situation often occurs in these decades-old cases where boards of education don't run to court and they operate along after they've eliminated the vestiges. All right. Thank you, Mr. Chiu. Mr. Dorison. Thank you very much, Your Honor. I'd like to pick up with the issue of good faith that the panel was just asking about. Freeman v. Pitts makes clear that even if a board can show that it's remedied the vestiges of discrimination at some earlier time, the obligation to comply with all existing court orders continues until the unitary status declaration, as Mr. Hsu just said. So the board has to prove not only compliance with the historical orders, but also show that the current racial imbalances are not the result of some new action. And the reason that good faith is so critical is because, as Judge Wynn pointed out, it demonstrates to the court and to the public the district's commitment to a future free of race discrimination. That's what Freeman really is about. And that's why the obligation to come back into court and secure a legal determination of unitary status is so critical. What do we do? We send it, from your perspective, I know you want us just to vacate the unitary status. But even if we do that, we send it back. And at that point, isn't the trial, aren't we really asking the trial judge then, go take a look at that 2011 plan and make a determination as to whether good faith was. If the trial judge then makes findings, supported and come back and say good faith, he then says, okay, that's good, we'll set up. The board then can come and do just what it's done and ask for unitary status. And if it doesn't at that point, it would seem to me that even if it's not in good faith, the only thing you do is come back and enact another plan in light of the fact that you're now unitary. So ultimately, it looks like this thing is coming to a point where the end result is going, is on the wall. I don't know when it's going to happen, but it's coming there. I think that's right, Your Honor. I think this court pointed the way there. My point is it's not going to be a long time. No, we don't think it is either. And the plaintiff says would like the district to become unitary, would like the district to address the legacy and continuing impacts of segregation. I believe that's what this court said in 2012 is exactly what you described. It told the district court to look at the 2011 plan and make a determination, and not just that it was enacted in good faith, Your Honor, but that it moved the district towards unitary status. And what's troubling is the evidence is clear and uncontroverted that it didn't do that. And so in the wake, you know, at that point, when it can't – They could have kept the old plan is what you're saying and been better off than going with the 2011 plan. That's exactly right, Your Honor. And instead what happens is the district waits until the point where it can't explain the disparities, the disparities that were caused by affirmative action by the school board, and then it comes forward and asks for unitary status. And so the good faith obligation continues the entire time, and it's critical, again, in ensuring the public that there's not going to be any future discrimination. If you believe the – if you accept the school board – of the plan in 2011-2012, and Judge Howard also recited the summary and history of that plan. Now, he didn't come out expressly and say, given the circumstances, this plan was enacted in good faith. But you can imply that first. And number two, Mr. Sue also said that it's not a requirement that the school board, with each decision, move steadily toward unitary status. There can be outliers that would not deprive the district court of finding that, in fact, there was unitary status. The fact is this decision, Your Honor, is not an outlier. It's a clear regression. It's a step away from unitary status. Well, I wonder whether it is an outlier because for 35 years, there have been no complaints about the school board's movement toward unitary status. Why isn't it? It is not an outlier because the school board had an opportunity to continue to act in good faith, and it didn't. Mr. Sue's point is that they don't need to do that each and every time. Well, what they need to do while they're still subject to the court's jurisdiction is not to take any actions that retrogress or increase segregation in the school district. If you accept the school board's position on this, then it's as if they were declared unitary before the 2011 plan was implemented, and they weren't. That means a district that is still under court order has the opportunity to adopt a clearly more discriminatory plan. In addition, there's no evidence in the record that Judge Howard made that determination. I think the portions of the order that you read are clear that he did not make that determination. You can correct me. I thought the conclusion was that some areas became demographically more difficult to balance, and the school board continued to make efforts to reduce the imbalance. But in each time the board acted, it acted to reduce imbalance as opposed to increasing it. And the imbalance, according to the court, was created by a movement of people. Isn't that what the district court found? Well, I don't think the district court made a finding about the alternatives that were presented to the board in 2011. I'm talking about whether the board's reaction each time was to mitigate the imbalance that had been created by demographics and not by an unconstitutional decision. Well, the 2011 plan outcome was not the result of demographics. It was the result of the school board's affirmative selection of a plan that predicted They were trying to mitigate. They had needed a new school here, and they closed a school that they couldn't bring in balance to and these types of things. In other words, all of its actions may have not ended up in a better balance, but it mitigated the imbalance that had existed because of demographics. I thought that's what the district court found. Well, again, I don't think the district court made that finding as to the 2011 plan, and the evidence that was presented showed that there was no attempt to mitigate the imbalance under the proposed plan, that the plan that was selected increased imbalance. Thank you. Thank you. All right, we'll come down and greet counsel. Absolutely. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, James A. Wynn Jr., Albert Diaz